## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **GENBAND US LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:14-cv-33** |
| | § | |
| **METASWITCH NETWORKS LTD** | § | **JURY TRIAL DEMANDED** |
| **AND METASWITCH NETWORKS** | § | |
| **CORP.** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORIGINAL COMPLAINT

GENBAND US LLC, on personal knowledge as to its own actions and upon information and belief as to the actions of others, hereby alleges for its complaint against Metaswitch Networks Ltd and Metaswitch Networks Corp. for patent infringement the following:

## PARTIES

1.   Plaintiff GENBAND US LLC ("Plaintiff" or "GENBAND") is a Delaware limited liability company with its principal place of business in this Judicial District at 2801 Network Boulevard, Suite 300, Frisco, TX 75034.

2.   Defendant Metaswitch Networks Corp. is a corporation organized under the laws of the state of Delaware with an office located in this Judicial District at 3313 Essex Drive, Suite 100, Richardson, TX 75082 (the "Texas office").

3.   Defendant Metaswitch Networks Ltd is a company organized under the laws of the United Kingdom with its principal place of business at 100 Church St., Enfield EN2 6BQ, United Kingdom, and, upon information and belief, is the parent company of its wholly-owned

subsidiary Metaswitch Networks Corp..  Metaswitch Networks Ltd does business in the United States and in Texas directly and through its subsidiary, Metaswitch Networks Corp..  Metaswitch Networks Ltd is registered to do business in Texas, is doing business in the Eastern District of Texas, and can be served through its registered agent for service, Corporation Service Company, 211 E 7th Street, Suite 620, Austin, TX 78701-3218.  Metaswitch Networks Ltd and Metaswitch Networks Corp. will be collectively referred to as "Defendants" or "Metaswitch."

### JURISDICTION AND VENUE

4.  This is an action for patent infringement that arises under the patent laws of the United States 35 U.S.C. § 100 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5.  Plaintiff GENBAND was founded as General Bandwidth in 1999.  GENBAND is registered to do business in Texas and is doing business in the Eastern District of Texas.  In particular, GENBAND conducts, in the Eastern District of Texas, research and development, manufacturing, sales, and service of products that compete directly with Metaswitch products that infringe the patents at issue in this case.  GENBAND employs approximately 335 employees in the Eastern District of Texas.

6.  This Court has general and specific personal jurisdiction over Metaswitch. Metaswitch has substantial contacts with this forum.  Metaswitch, directly and/or through intermediaries, has conducted and continues to conduct substantial business in the state of Texas and in this Judicial District.  Metaswitch, directly and/or through intermediaries, makes, offers for sale, sells, uses, and/or advertises (including through a website) its products in the State of Texas and in this Judicial District.  Upon information and belief, Metaswitch purposefully and voluntarily placed its products into the stream of commerce with the expectation that they will be

2

purchased by customers in the state of Texas and in this Judicial District.  As explained in more detail below, Metaswitch, directly and/or through intermediaries, caused and/or committed acts of patent infringement within the State of Texas and, more particularly, within this Judicial District.  Metaswitch's infringing products have been and continue to be purchased and used by customers in the State of Texas and in this Judicial District.

7.   Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and 1400(b) because acts and transactions constituting at least a subset of the violations alleged herein occurred in this Judicial District and/or because Metaswitch transacts business in this Judicial District through, for example, Metaswitch's Texas office.  Venue is also proper in this Judicial District under 28 U.S.C. § 1391(c) because Metaswitch is subject to personal jurisdiction in this District.

## COUNT I

### Infringement of U.S. Patent No. 6,772,210

8.   GENBAND repeats and realleges each of the allegations set forth above in paragraphs 1-7.

9.   GENBAND is the owner by assignment of United States Patent No. 6,772,210, entitled "Method and Apparatus for Exchanging Communication Between Telephone Number Based Devices in an Internet Protocol Environment" ("the '210 Patent") with ownership of all substantial rights in the '210 Patent, including the right to exclude others and to sue and recover damages for the infringement complained of herein.  A copy of the '210 Patent is attached as Exhibit A.

10. Metaswitch has known of the '210 Patent at least as early as service of this Complaint.

11. The '210 Patent addresses, in part, techniques for performing network address translation regarding an address of a telephone-number-based device.

12. Upon information and belief, Metaswitch makes, uses, imports, offers to sell, and/or sells in the United States systems that perform network address translation on an address of a telephone-number-based device.

13. Upon information and belief, at least Metaswitch's Perimeta Session Border Controller performs network address translation on an address of a telephone-number-based device.

14. Upon information and belief, Metaswitch is directly infringing one or more claims of the '210 Patent, literally or by the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling in the United States infringing devices that perform network address translation on an address of a telephone-number-based device as recited in the claims of the '210 Patent, including at least Metaswitch's session border controller products such as the Perimeta Session Border Controller.  As a result, Metaswitch has been and is still infringing, literally or by the doctrine of equivalents, one or more claims of the '210 Patent as defined by 35 U.S.C. § 271(a).

15. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch has induced and continues to induce infringement of the '210 Patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers to use the accused products to perform network address translation of an address of a telephone-number-based device as recited in one or more claims of the '210 Patent.  Such use constitutes direct infringement, literally or under the doctrine of equivalents, of one or more claims of the '210 Patent.  Metaswitch's acts of encouragement of this direct infringement include:  providing its customers devices for

performing network address translation on an address of a telephone-number-based device as recited in one or more claims of the '210 Patent (including but not limited to the Perimeta Session Border Controller) and intending that its customers use such devices for performing such address translation; purposefully and voluntarily placing infringing products and services in the stream of commerce with the expectation that its products and services will be used by its customers in the Eastern District of Texas and in other districts to perform network address translation of an address of a telephone-number-based device as recited in one or more claims of the '210 Patent; providing additional components of systems that may not themselves include the Metaswitch session boarder controller, but that enable or make use of the Metaswitch session border controllers including, *e.g.,* application servers, media gateways, softswitches, and other network equipment; advertising these products and services through its website; and providing instructions to use these products and services to perform network address translation on a telephone-number-based device as recited in one or more claims of the '210 Patent.  Further, Metaswitch has actual knowledge of how its customers use the accused products and services.

16. Upon information and belief, Metaswitch is continuing the activity described in the previous paragraph, despite its actual knowledge, at least as of the service of this Complaint, of (i) the '210 Patent and (ii) that the specific actions that Metaswitch is actively inducing its customers to perform constitute infringement of the '210 Patent.  At a minimum, because Metaswitch is and remains on notice of the '210 Patent and the accused infringement, at least as of the service of this Complaint, Metaswitch is and remains willfully blind regarding the infringement it is inducing and continues to induce.

17. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch is contributing and continues to contribute to the infringement of the '210 Patent

pursuant to 35 U.S.C. §271(c) by, without authority, selling and/or offering for sale within the United States, importing, and/or supplying to its customers components of the claimed apparatus and components that perform the network address translation of an address of a telephone-number-based device as claimed in one or more claims of the '210 Patent, including but not limited to the Perimeta Session Border Controller.  When the Metaswitch products, such as its session border controllers, are operated by customers to perform network address translation of a telephone-number-based device as recited by the claims of the '210 Patent, those claims are infringed, literally or under the doctrine of equivalents.  The functionality of Metaswitch's session border controllers that performs network address translation on an address of a telephone-number-based device constitutes a material part of the inventions claimed in the '210 Patent.

18. Upon information and belief, Metaswitch has known at least as of the date of service of this Complaint, for the reasons described in detail above, that these components are especially adapted for use in infringing the '210 Patent.  These components are not staple articles of commerce suitable for substantial noninfringing use at least because the accused network address translation functionality has no use apart from performing network address translation of an address of a telephone-number-based device as recited in one or more claims of the '210 Patent.

19. GENBAND has suffered damage by reason of Metaswitch's infringement of the '210 Patent and will continue to suffer additional damage until this Court enjoins Metaswitch's infringing conduct.

20. Metaswitch will continue to infringe the '210 Patent unless enjoined by this Court. Such infringing activity causes GENBAND irreparable harm and will continue to cause such harm without the issuance of an injunction.

## COUNT II

### Infringement of U.S. Patent No. 6,791,971

21.     GENBAND repeats and realleges each of the allegations set forth above in paragraphs 1-20.

22. GENBAND is the owner by assignment of United States Patent No. 6,791,971, entitled "Method and Apparatus for Providing a Communications Service, for Communication and for Extending Packet Network Functionality" ("the '971 Patent") with ownership of all substantial rights in the '971 Patent, including the right to exclude others and to sue and recover damages for the infringement complained of herein.  A copy of the '971 Patent is attached as Exhibit B.

23. Metaswitch has known of the '971 Patent at least as early as service of this Complaint.

24. The '971 Patent addresses, in part, enabling communications services associated with a service control function from an Internet Protocol ("IP") service switching function.

25. Upon information and belief, Metaswitch makes, uses, imports, offers to sell, and/or sells in the United States systems that enable communications services associated with a service control function from an IP service switching function.

26. Upon information and belief, at least Metaswitch's Perimeta Service Broker enables communications services associated with a service control function from an IP service switching function.

27. Upon information and belief, Metaswitch's Service Broker is made and developed in Metaswitch's Texas office.

28. Upon information and belief, Metaswitch is directly infringing one or more claims of the '971 Patent, literally or by the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling in the United States infringing devices that enable communications services associated with a service control function from an IP service switching function as recited in the claims of the '971 Patent, including at least Metaswitch's Service Broker.  As a result, Metaswitch has been and is still infringing, literally or by the doctrine of equivalents, one or more claims of the '971 Patent as defined by 35 U.S.C. § 271(a).

29. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch has induced and continues to induce infringement of the '971 Patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers to use the accused products to enable communications services associated with a service control function from an IP service switching function as recited in one or more claims of the '971 Patent.  Such use constitutes direct infringement, literally or under the doctrine of equivalents, of one or more claims of the '971 Patent.  Metaswitch's acts of encouragement of this direct infringement include:  providing devices to customers for enabling communications services associated with a service control function from an IP service switching function as recited in one or more claims of the '971 Patent (including but not limited to the Service Broker) and intending that its customers use such devices for that purpose; purposefully and voluntarily placing infringing products and services in the stream of commerce with the expectation that its products and services will be used by its customers in the Eastern District of Texas and in other districts to enable communications services associated with a service control function from an IP service switching function as recited in one or more claims of the '971 Patent; providing additional components of systems that may not themselves include the Metaswitch Service Broker, but that enable or make use of

the Metaswitch Service Broker including, *e.g.,* application servers, media gateways, softswitches, session border controllers, and other network equipment; advertising these products and services through its website; and providing instructions to use these products and services to enable communications services associated with a service control function from an IP service switching function as recited in one or more claims of the '971 Patent.  Further, Metaswitch has actual knowledge of how its customers use the accused products and services.

30. Upon information and belief, Metaswitch is continuing the activity described in the previous paragraph, despite its actual knowledge, at least as of the service of this Complaint, of (i) the '971 Patent and (ii) that the specific actions that Metaswitch is actively inducing its customers to perform constitute infringement of the '971 Patent.   At a minimum, because Metaswitch is and remains on notice of the '971 Patent and the accused infringement, at least as of the service of this Complaint, Metaswitch is and remains willfully blind regarding the infringement it is inducing and continues to induce.

31. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch is contributing and continues to contribute to the infringement of the '971 Patent pursuant to 35 U.S.C. §271(c) by, without authority, selling and/or offering for sale within the United States, importing, and/or supplying to its customers components of the claimed apparatus and components that enable communications services associated with a service control function from an IP service switching function as claimed in one or more claims of the '971 Patent, including but not limited to the Metaswitch Service Broker.  When the Metaswitch products, such as its Service Broker, are operated by customers to enable communications services associated with a service control function from an IP service switching function as recited in one or more claims of the '971 Patent, such operation infringes, literally or under the doctrine of

equivalents.   The functionality of Metaswitch's Service Broker that enables communications services associated with a service control function from an IP service switching function as recited in one or more claims of the '971 Patent constitutes a material part of the inventions claimed in the '971 Patent.

32. Upon information and belief, Metaswitch has known at least as of the date of service of this Complaint, for the reasons described in detail above, that these components are especially adapted for use in infringing the '971 Patent.   These components are not staple articles of commerce suitable for substantial noninfringing use at least because the accused communication service functionality has no use apart from enabling communications services associated with a service control function from an IP service switching function as recited in one or more claims of the '971 Patent.

33. GENBAND has suffered damage by reason of the infringement of the '971 Patent and will continue to suffer additional damage until this Court enjoins the infringing conduct.

34. Metaswitch will continue to infringe the '971 Patent unless enjoined by this Court. Such infringing activity causes GENBAND irreparable harm and will continue to cause such harm without the issuance of an injunction.

## COUNT III

### Infringement of U.S. Patent No. 6,885,658

35.     GENBAND repeats and realleges each of the allegations set forth above in paragraphs 1-34.

36. GENBAND is the owner by assignment of United States Patent No. 6,885,658, entitled "Method and Apparatus for Interworking Between Internet Protocol (IP) Telephony Protocols" ("the '658 Patent") with ownership of all substantial rights in the '658 Patent,

including the right to exclude others and to sue and recover damages for the infringement complained of herein.  A copy of the '658 Patent is attached as Exhibit C.

37. Metaswitch has known of the '658 Patent at least as early as service of this Complaint.

38. The '658 Patent addresses, in part, techniques for interworking between different IP telephony protocols.

39. Upon information and belief, Metaswitch makes, uses, imports, offers to sell, and/or sells in the United States systems that interwork between different IP telephony protocols.

40. Upon information and belief, at least Metaswitch's Integrated Softswitches (*e.g.*, its VP6010 and VP6050 products) and Universal Media Gateways (*e.g.* its MG6010 and MG6050 products) interwork between different IP telephony protocols.

41. Upon information and belief, Metaswitch is directly infringing one or more claims of the '658 Patent, literally or by the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling in the United States infringing devices that interwork between different IP telephony protocols as recited in one or more claims of the '658 Patent, including at least Metaswitch's Integrated Softswitches (*e.g.*, its VP6010 and VP6050 products) and Universal Media Gateways (*e.g.* its MG6010 and MG6050 products).  As a result, Metaswitch has been and is still infringing, literally or by the doctrine of equivalents, one or more claims of the '658 Patent as defined by 35 U.S.C. § 271(a).

42. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch has induced and continues to induce infringement of the '658 Patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers to use the accused products to perform interworking between different IP telephony protocols as recited in one or more claims of the

'658 Patent.   Such use constitutes direct infringement, literally or under the doctrine of equivalents, of one or more claims of the '658 Patent.   Metaswitch's acts of encouragement of this direct infringement include:   providing its customers devices for interworking between different IP telephony protocols as recited in one or more claims of the '658 Patent (including but not limited to its VP6010, VP6050, MG6010, and MG6050 products) and intending that its customers use such devices for that purpose; purposefully and voluntarily placing infringing products and services in the stream of commerce with the expectation that its products and services will be used by its customers in the Eastern District of Texas and in other districts to interwork between different telephony protocols as recited in one or more claims of the '658 Patent; providing additional components that may not themselves include the Metaswitch VP6010, VP6050, MG6010, and/or MG6050 products, but that enable or make use of one or more of those products, *e.g.,* application servers, media gateways, softswitches, session border controllers, and other network equipment; advertising these products and services through its website; and providing instructions to use these products and services to interwork between different IP telephony protocols as recited in one or more claims of the '658 Patent.   Further, Metaswitch has actual knowledge of how its customers use the accused products and services.

43. Upon information and belief, Metaswitch is continuing the activity described in the previous paragraph, despite its actual knowledge, at least as of the service of this Complaint, of (i) the '658 Patent and (ii) that the specific actions that Metaswitch is actively inducing its customers to perform constitute infringement of the '658 Patent.   At a minimum, because Metaswitch is and remains on notice of the '658 Patent and the accused infringement, at least as of the service of this Complaint, Metaswitch is and remains willfully blind regarding the infringement it is inducing and continues to induce.

44. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch is contributing and continues to contribute to the infringement of the '658 Patent pursuant to 35 U.S.C. §271(c) by, without authority, selling and/or offering for sale within the United States, importing, and/or supplying to its customers components of the claimed devices and components that interwork between different IP telephony protocols as claimed in the '658 Patent, including but not limited to the Metaswitch VP6010, VP6050, MG6010, and/or MG6050 products.   When the Metaswitch products, such as its VP6010, VP6050, MG6010, and/or MG6050 products, are operated by customers to interwork between different IP telephony protocols as recited in one or more claims of the '658 Patent, direct infringement occurs.   The functionality of Metaswitch's VP6010, VP6050, MG6010, and/or MG6050 products that interwork between different IP telephony protocols as recited in one or more claims of the '971 Patent constitutes a material part of the inventions claimed in the '658 Patent.

45. Upon information and belief, Metaswitch has known at least as of the date of service of this Complaint, for the reasons described in detail above, that these components are especially adapted for use in infringing the '658 Patent.   These components are not staple articles of commerce suitable for substantial noninfringing use at least because the accused interworking functionality has no use apart from interworking between different IP telephony protocols as recited in one or more claims of the '658 Patent.

46. GENBAND has suffered damage by reason of the infringement of the '658 Patent and will continue to suffer additional damage until this Court enjoins the infringing conduct.

47. Metaswitch will continue to infringe the '658 Patent unless enjoined by this Court. Such infringing activity causes GENBAND irreparable harm and will continue to cause such harm without the issuance of an injunction.

## COUNT IV

### Infringement of U.S. Patent No. 6,934,279 and U.S. Patent No. 7,995,589

48.     GENBAND repeats and realleges each of the allegations set forth above in paragraphs 1-47.

49. GENBAND is the owner by assignment of United States Patent No. 6,934,279, entitled "Controlling Voice Communications over a Data Network" ("the '279 Patent") with ownership of all substantial rights in the '279 Patent, including the right to exclude others and to sue and recover damages for the infringement complained of herein.  A copy of the '279 Patent is attached as Exhibit D.

50. GENBAND is the owner by assignment of United States Patent No. 7,995,589, entitled "Controlling Voice Communications over a Data Network" ("the '589 Patent") with ownership of all substantial rights in the '589 Patent, including the right to exclude others and to sue and recover damages for the infringement complained of herein.  A copy of the '589 Patent is attached as Exhibit E.  The '589 Patent is a continuation of the '279 Patent.

51. Metaswitch has known of the '279 Patent and '589 Patent at least as early as service of this Complaint.

52. The '279 Patent and '589 Patent address, in part, techniques for enabling communications over a data network using a user interface.

53. Upon information and belief, Metaswitch makes, uses, imports, offers to sell, and/or sells in the United States systems that enable communications over a data network using a user interface.

54. Upon information and belief, at least Metaswitch's Metasphere Telephony Application Server ("Application Server"), Accession, and CommPortal products enable communications over a data network using a user interface.

55. Upon information and belief, Metaswitch is directly infringing one or more claims of the '279 Patent and '589 Patent, literally or by the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling in the United States infringing systems that enable communications over a data network using a user interface as recited in one or more claims of the '279 Patent and in one or more claims of the '589 Patent, including at least the Application Server, Accession, and CommPortal products.  For example, the Application Server provides communications over a data network using a user interface that has click-to-dial features in either or both of Metaswitch's Accession or CommPortal products.  As a result, Metaswitch has been and is still infringing, literally or by the doctrine of equivalents, one or more claims of the '279 Patent and '589 Patent as defined by 35 U.S.C. § 271(a).

56. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch has induced and continues to induce infringement of the '279 Patent and the '589 Patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers to use the accused products to enable communications over a data network using a user interface as recited in one or more claims of the '589 and '279 Patents.  Such use constitutes direct infringement, literally or under the doctrine of equivalents, of one or more claims of the '279 Patent and the '589 Patent. Metaswitch's acts of encouragement of this direct infringement include:  providing its customers systems for enabling communications over a data network using a user interface as recited in one or more claims of the '589 and '279 Patents (including but not limited to the Application Server, Accession, and CommPortal products) and intending that its customers use such systems for that

purpose; purposefully and voluntarily placing infringing products and services in the stream of commerce with the expectation that its products and services will be used by its customers in the Eastern District of Texas and in other districts to enable communications over a data network using a user interface as recited in one or more claims of the '589 and '279 Patents; providing additional components that may not themselves include the Metaswitch Application Server, Accession, and/or CommPortal products, but that enable or make use of those products, *e.g.,* application servers, media gateways, softswitches, session border controllers, and other network equipment; advertising these products and services through its website; and providing instructions to use these products and services to enable communications over a data network using a user interface as recited in one or more claims of the '589 and '279 Patents.  Further, Metaswitch has actual knowledge of how its customers use the accused products and services.

57. Upon information and belief, Metaswitch is continuing the activity described in the previous paragraph, despite its actual knowledge, at least as of the service of this Complaint, of (i) the '279 Patent and '589 Patent and (ii) that the specific actions that Metaswitch is actively inducing its customers to perform constitute infringement of the '279 Patent and the '589 Patent. At a minimum, because Metaswitch is and remains on notice of the '279 Patent and the '589 Patent and the accused infringement, at least as of the service of this Complaint, Metaswitch is and remains willfully blind regarding the infringement it is inducing and continues to induce.

58. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch is contributing and continues to contribute to the infringement of the '279 Patent and the '589 Patent pursuant to 35 U.S.C. §271(c) by, without authority, selling and/or offering for sale within the United States, importing, and/or supplying to its customers components of the claimed systems and components that enable communications over a data network using a user

interface as claimed in one or more claims of the '279 Patent and the '589 Patent, including but not limited to the Application Server, Accession, and/or CommPortal products.  When the Metaswitch products, such as its Application Server, Accession, and/or CommPortal products, are operated by customers to enable communications over a data network using a user interface as recited in one or more claims of the '589 and '279 Patents, direct infringement results.  The functionality of Metaswitch's VP6010, VP6050, MG6010, and/or MG6050 products that enables communications over a data network using a user interface as recited in one or more claims of the '589 and '279 Patents constitutes a material part of the inventions claimed in the '279 Patent and the '589 Patent.

59. Upon information and belief, Metaswitch has known at least as of the date of service of this Complaint, for the reasons described in detail above, that these components are especially adapted for use in infringing the '279 Patent and the '589 Patent.  These components are not staple articles of commerce suitable for substantial noninfringing use at least because the accused functionality for enabling communications have no use apart from enabling communications over a data network using a user interface as recited in one or more claims of the '279 and 589 Patents.

60. GENBAND has suffered damage by reason of the infringement of the '279 Patent and the '589 Patent and will continue to suffer additional damage until this Court enjoins the infringing conduct.

61. Metaswitch will continue to infringe the '279 Patent and the '589 Patent unless enjoined by this Court.  Such infringing activity causes GENBAND irreparable harm and will continue to cause such harm without the issuance of an injunction.

## COUNT V

### Infringement of U.S. Patent No. 7,047,561

62.     GENBAND repeats and realleges each of the allegations set forth above in paragraphs 1-61.

63. GENBAND is the owner by assignment of United States Patent No. 7,047,561, entitled "Firewall for Real-Time Internet Applications" ("the '561 Patent") with ownership of all substantial rights in the '561 Patent, including the right to exclude others and to sue and recover damages for the infringement complained of herein.  A copy of the '561 Patent is attached as Exhibit F.

64. Metaswitch has known of the '561 Patent at least as early as service of this Complaint.

65. The '561 Patent addresses, in part, techniques for applying an application proxy to packets in signaling or control channels and a packet filter to packets in bearer channels.

66. Upon information and belief, Metaswitch makes, uses, imports, offers to sell, and/or sells in the United States systems that apply an application proxy to packets in signaling or control channels and a packet filter to packets in bearer channels.

67. Upon information and belief, at least Metaswitch's Perimeta Session Border Controller applies an application proxy to packets in signaling or control channels and a packet filter to packets in bearer channels.

68. Upon information and belief, Metaswitch is directly infringing one or more claims of the '561 Patent, literally or by the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling in the United States infringing devices that apply an application proxy to packets in signaling or control channels and that apply a packet filter to packets in bearer

channels as recited in one or more claims of the '561 Patent, including at least Metaswitch's session border controller products such as the Perimeta Session Border Controller.  As a result, Metaswitch has been and is still infringing, literally or by the doctrine of equivalents, one or more claims of the '561 Patent as defined by 35 U.S.C. § 271(a).

69. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch has induced and continues to induce infringement of the '561 Patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers to use the accused products to apply an application proxy and a packet filter as recited in one or more claims of the '561 Patent.  Such use constitutes direct infringement, literally or under the doctrine of equivalents, of one or more claims of the '561 Patent.  Metaswitch's acts of encouragement of this direct infringement include:  providing its customers devices for applying an application proxy and a packet filter as recited in one or more claims of the '561 Patent (including but not limited to the Perimeta Session Border Controller) and intending that its customers use such devices for that purpose; purposefully and voluntarily placing infringing products and services in the stream of commerce with the expectation that its products and services will be used by its customers in the Eastern District of Texas and in other districts to apply an application proxy and a packet filter as recited in one or more claims of the '561 Patent; providing additional components that may not themselves include the Metaswitch session border controller, but that enable or make use of the Metaswitch session border controllers including, *e.g.,* application servers, media gateways, softswitches, and other network equipment; advertising these products and services through its website; and providing instructions to use these products and services to apply an application proxy and a packet filter as recited in one or more claims of the '561 Patent.  Further, Metaswitch has actual knowledge of how its customers use the accused products and services.

70. Upon information and belief, Metaswitch is continuing the activity described in the previous paragraph, despite its actual knowledge, at least as of the service of this Complaint, of (i) the '561 Patent and (ii) that the specific actions that Metaswitch is actively inducing its customers to perform constitute infringement of the '561 Patent.   At a minimum, because Metaswitch is and remains on notice of the '561 Patent and the accused infringement, at least as of the service of this Complaint, Metaswitch is and remains willfully blind regarding the infringement it is inducing and continues to induce.

71. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch is contributing and continues to contribute to the infringement of the '561 Patent pursuant to 35 U.S.C. §271(c) by, without authority, selling and/or offering for sale within the United States, importing, and/or supplying to its customers components of the claimed devices and components that apply an application proxy and a packet filter as claimed in one or more claims of the '561 Patent, including but not limited to the Perimeta Session Border Controller. When the Metaswitch products, such as its session border controllers, are operated by customers to apply an application proxy and a packet filter as recited in one or more claims of the '561 Patent, direct infringement results.   The functionality of Metaswitch's session border controllers that applies an application proxy and a packet filter as recited in one or more claims of the '561 Patent constitutes a material part of the inventions claimed in the '561 Patent.

72. Upon information and belief, Metaswitch has known at least as of the date of service of this Complaint, for the reasons described in detail above, that these components are especially adapted for use in infringing the '561 Patent.   These components are not staple articles of commerce suitable for substantial noninfringing use at least because the accused functionality has no use apart from applying an application proxy to packets in signaling or control channels

and applying a packet filter to packets in bearer channels as recited in one or more claims of the '561 Patent.

73. GENBAND has suffered damage by reason of the infringement of the '561 Patent and will continue to suffer additional damage until this Court enjoins the infringing conduct.

74. Metaswitch will continue to infringe the '561 Patent unless enjoined by this Court. Such infringing activity causes GENBAND irreparable harm and will continue to cause such harm without the issuance of an injunction.

## COUNT VI

### Infringement of U.S. Patent No. 7,184,427 and U.S. Patent No. 7,990,984

75.    GENBAND repeats and realleges each of the allegations set forth above in paragraphs 1-74.

76. GENBAND is the owner by assignment of United States Patent No. 7,184,427, entitled "System and Method for Communicating Telecommunication Information from a Broadband Network to a Telecommunication Network" ("the '427 Patent") with ownership of all substantial rights in the '427 Patent, including the right to exclude others and to sue and recover damages for the infringement complained of herein.  A copy of the '427 Patent is attached as Exhibit G.

77.    GENBAND is the owner by assignment of United States Patent No. 7,990,984, entitled "System and Method for Communicating Telecommunication Information from a Broadband Network to a Telecommunication Network" ("the '984 Patent") with ownership of all substantial rights in the '984 Patent, including the right to exclude others and to sue and recover damages for the infringement complained of herein.  A copy of the '984 Patent is attached as Exhibit H.  The '984 Patent is a continuation of the '427 Patent.

78. Metaswitch has known of the '427 Patent and the '984 Patent at least as early as service of this Complaint.

79. The '427 Patent and the '984 Patent address, in part, techniques for communicating telecommunication information associated with subscribers between a telecommunication network and a broadband network.

80. Upon information and belief, Metaswitch makes, uses, imports, offers to sell, and/or sells in the United States systems that communicate telecommunication information associated with subscribers between a telecommunication network and a broadband network.

81. Upon information and belief, at least Metaswitch's Integrated Softswitches (*e.g.*, its VP6010 and VP6050 products) and Universal Media Gateways (*e.g.* its MG6010 and MG6050) communicate telecommunication information associated with subscribers between a telecommunication network and a broadband network.

82. Upon information and belief, Metaswitch is directly infringing one or more claims of the '427 Patent and '984 Patent, literally or by the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling in the United States infringing devices that communicate telecommunication information associated with subscribers between a telecommunication network and a broadband network as recited in one or more claims of the '427 Patent and the '984 Patent, including at least Metaswitch's Integrated Softswitches (*e.g.*, its VP6010 and VP6050 products) and Universal Media Gateways (*e.g.* its MG6010 and MG6050 products).  As a result, Metaswitch has been and is still infringing, literally or by the doctrine of equivalents, one or more claims of the '427 Patent and the '984 Patent as defined by 35 U.S.C. § 271(a).

83. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch has induced and continues to induce infringement of the '427 Patent and the '984 Patent pursuant to 35 U.S.C. § 271(b) by encouraging its customers to use the accused products for communicating telecommunication information associated with subscribers between a telecommunication network and a broadband network as recited in one or more claims of the '427 and '984 Patents.  Such use constitutes direct infringement, literally or under the doctrine of equivalents, of one or more claims of the '427 Patent and the '984 Patent.  Metaswitch's acts of encouragement of this direct infringement include:  providing its customers devices (including but not limited to its VP6010, VP6050, MG6010, and MG6050 products) for communicating telecommunication information associated with subscribers between a telecommunication network and a broadband network and intending that its customers use such devices for communicating telecommunication information associated with subscribers between a telecommunication network and a broadband network; purposefully and voluntarily placing infringing products and services in the stream of commerce with the expectation that its products and services will be used by its customers in the Eastern District of Texas and in other districts to communicate telecommunication information associated with subscribers between a telecommunication network and a broadband network as recited in one or more claims of the '427 and '984 Patents; providing additional components that may not themselves include one or more of Metaswitch's VP6010, VP6050, MG6010, and/or MG6050 products, but that enable or make use of one or more of those products, *e.g.,* application servers, media gateways, softswitches, session border controllers, and other network equipment; advertising these products and services through its website; and providing instructions to use these products and services to communicate telecommunication information associated with subscribers between a

telecommunication network and a broadband network as recited in one or more claims of the '427 and '984 Patents.  Further, Metaswitch has actual knowledge of how its customers use the accused products and services.

84. Upon information and belief, Metaswitch is continuing the activity described in the previous paragraph, despite its actual knowledge, at least as of the service of this Complaint, of (i) the '427 Patent and the '984 Patent and (ii) that the specific actions that Metaswitch is actively inducing its customers to perform constitute infringement of the '427 Patent and the '984 Patent.  At a minimum, because Metaswitch is and remains on notice of the '427 Patent and the '984 Patent and the accused infringement, at least as of the service of this Complaint, Metaswitch is and remains willfully blind regarding the infringement it is inducing and continues to induce.

85. Upon information and belief, at least as of the date of service of this Complaint, Metaswitch is contributing and continues to contribute to the infringement of the '427 Patent and the '984 Patent pursuant to 35 U.S.C. §271(c) by, without authority, selling and/or offering for sale within the United States, importing, and/or supplying to its customers components of the claimed apparatus and components that communicate telecommunication information associated with subscribers as claimed in one or more claims of the '427 Patent and the '984 Patent, including but not limited to the Metaswitch VP6010, VP6050, MG6010, and/or MG6050 products.  When the Metaswitch products, such as its VP6010, VP6050, MG6010, and/or MG6050 products, are operated by customers to communicate telecommunication information associated with subscribers between a telecommunication network and a broadband network as recited in one or more claims of the '427 and '984 Patents, direct infringement results.  The functionality of Metaswitch's VP6010, VP6050, MG6010, and/or MG6050 products that

communicate telecommunication information associated with subscribers between a telecommunication network and a broadband network as recited in one or more claims of the '427 and '984 Patents constitutes a material part of the inventions claimed in the '427 Patent and '984 Patent.

86. Upon information and belief, Metaswitch has known at least as of the date of service of this Complaint, for the reasons described in detail above, that these components are especially adapted for use in infringing the '427 Patent and the '984 Patent.  These components are not staple articles of commerce suitable for substantial noninfringing use at least because the accused communication functionality has no use apart from communicating telecommunication information associated with subscribers between a telecommunication network and a broadband network as recited in one or more claims of the '427 and 984 Patents.

87. GENBAND has suffered damage by reason of the infringement of the '427 Patent and the '984 Patent and will continue to suffer additional damage until this Court enjoins the infringing conduct.

88. Metaswitch will continue to infringe the '427 Patent and the '984 Patent unless enjoined by this Court.  Such infringing activity causes GENBAND irreparable harm and will continue to cause such harm without the issuance of an injunction.

**PRAYER FOR RELIEF**

WHEREFORE, GENBAND prays that this Court enter judgment:

A.      That Defendants have infringed United States Patent Nos. 6,772,210; 6,791,971; 6,885,658; 6,934,279; 7,047,561; 7,184,427; 7,990,984 and 7,995,589;

B.      Enjoining and restraining Defendants and their agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents, and all others acting in concert or participating with them from directly or indirectly infringing United States Patent Nos. 6,772,210; 6,791,971; 6,885,658; 6,934,279; 7,047,561; 7,184,427; 7,990,984 and 7,995,589;

C.      Awarding GENBAND US LLC actual damages, not less than a reasonable royalty, for Defendants' infringement including costs and pre- and post-judgment interest and reasonable attorneys' fees as allowed by law;

D.      Declaring this to be an exceptional case pursuant to 35 U.S.C. § 285 and awarding GENBAND its attorneys' fees; and

E.      Granting GENBAND such other and further relief as the Court may deem just and equitable.

Dated:  January 21, 2014                    Respectfully Submitted,


                                            By: /s/ *Douglas M. Kubehl*

                                            Douglas M. Kubehl
                                            Texas State Bar No. 00796909
                                            E-mail:   doug.kubehl@bakerbotts.com
                                            Jeffery D. Baxter
                                            Texas State Bar No. 24006816
                                            E-Mail:  jeff.baxter@bakerbotts.com
                                            Roshan S. Mansinghani
                                            Texas State Bar No.  24057026
                                            E-mail:  roshan.mansinghani@bakerbotts.com
                                            Vernon E. Evans
                                            Texas State Bar No. 24069688
                                            E-mail:  vernon.evans@bakerbotts.com
                                            Timothy J. Calloway
                                            Texas State Bar No. 24082766
                                            E-Mail: tim.calloway@bakerbotts.com

                                            Baker Botts L.L.P.
                                            2001 Ross Avenue
                                            Dallas, Texas 75201
                                            Telephone: (214) 953-6500
                                            Facsimile:  (214) 953-6503

                                            Attorneys for GENBAND US LLC