## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| GENBAND US LLC § § | |
| v. § § | Case No. 2:14-cv-33-JRG-RSP |
| METASWITCH NETWORKS CORP., ET AL. § § § | |

### REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court are two Summary Judgment Motions filed by Defendants Metaswitch Networks Ltd and Metaswitch Networks Corp. (collectively "Metaswitch"): Motion for Summary Judgment of No Willful Infringement and No Indirect Infringement (Dkt. No. 254); Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101 (Dkt. No. 255).

## I. LAW

### A. Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is

"genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and identify the evidence demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion at trial, the party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case." *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015) (quoting *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996)).

**B. Indirect Infringement**

A claim for induced infringement under 35 U.S.C. § 271(b) requires proof (1) of an act of direct infringement by another, and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the other's infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). The intent element requires that the defendant "[know] that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.''). A defendant's subjective belief that the asserted patent is invalid is not a defense to induced infringement. *Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1928 (2015).

A plaintiff claiming contributory patent infringement under 35 U.S.C. § 271(c) must prove (1) an act of direct infringement, (2) that the defendant "knew that the combination for which its components were especially made was both patented and infringing," and (3) that the components have "no substantial non-infringing uses." *Cross Med. Prods., Inc. v. Medtronic Sofamore Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005). "Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1928.

**C. Subject Matter Eligibility**

Section 101 of the Patent Act defines what is eligible for patent protection: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held that there are three specific exceptions to patent eligibility under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court set out a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)).

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Ultramercial*, 772 F.3d at

714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental … practice long prevalent in our system ….'") (quoting *Alice*, 134 S. Ct. at 2356).

For example, in *Bilski*, the Supreme Court rejected as a patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the Federal Circuit rejected as patent-ineligible a claim that included "eleven steps for displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. In *Intellectual Ventures*, the Federal Circuit rejected as a patent-ineligible a claim that recited components that "relate[d] to customizing information based on (1) information known about the user and (2) navigation data." *Intellectual Ventures*, 792 F.3d at 1369.

A court applies the second step of *Mayo* only if it finds in the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of processes that embodied the equivalent of natural laws." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012); *see also Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct. at 1299 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps … that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."). A claim, however, remains patent-ineligible if it describes only "'[p]ost-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

## II. WILLFUL INFRINGEMENT AND PRE-FILING INDIRECT INFRINGEMENT

Metaswitch seeks summary judgment of no willful infringement and no indirect infringement. (Dkt. No. 254). Plaintiff Genband US LLC ("Genband") concedes in its response:

> At this time, Genband does not oppose Metaswitch Networks Ltd. and Metaswitch Networks Corp.'s (collectively "Metaswitch") motion for summary judgment on the issues of pre-filing or post-filing willful infringement and pre-filing indirect infringement.

Dkt. No. 284 at 5

Accordingly, the Court recommends that partial summary judgment of no willful infringement be **GRANTED**. The Court recommends that partial summary judgment of no indirect infringement prior to the filing date of this action be **GRANTED**.

### III. POST-FILING INDIRECT INFRINGEMENT

Metaswitch seeks summary judgment on the issue of post-suit indirect infringement, namely induced infringement under 35 U.S.C. § 271(b) and contributory infringement under § 271(c). (Dkt. No. 254 at 23–26). Metaswitch advances two grounds for granting summary judgment.

*First*, Metaswitch argues it is entitled to summary judgment "because Genband has failed to establish an act of direct infringement by any Metaswitch customer."[1] (*Id.* at 25–26). Metaswitch contends that Genband's infringement expert, Dr. Beckmann, has failed to identify any specific direct infringer or any specific act of direct infringement. Metaswitch faults Dr. Beckmann for basing his opinions entirely on circumstantial evidence of direct infringement such as Metaswitch product manuals and the deposition testimony of Metaswitch employees regarding customer support. (Dkt. 297 at 8–10). Metaswitch repeatedly criticizes the evidence upon which Dr. Beckmann relies for failing to identify "specific examples" of infringement, *i.e.* direct evidence of direct infringement. (*Id.* at 9).

Proof of indirect infringement requires proof of direct infringement. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). It is well-settled that "[d]irect infringement can be proven by circumstantial evidence." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012); *see also Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d

---

[1] Metaswitch misstates the burden of proof for indirect infringement as "clear and convincing evidence." (Dkt. No. 254 at 24.) Infringement is established by a preponderance of the evidence. *See, e.g., Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011).

1261, 1272 (Fed. Cir. 1986) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.").

Genband does not dispute that its direct infringement evidence is circumstantial. (Dkt. No. 284 at 9). Therefore the relevant question is whether Genband has adduced sufficient circumstantial evidence of direct infringement to raise a genuine issue of material fact. Genband's circumstantial evidence includes: (1) Metaswitch product manuals that allegedly "instruct[] Metaswitch's customers on how the use the accused products in an infringing manner" and (2) deposition testimony regarding Metaswitch's testing and customer support activities. (Dkt. No. 284 at 9–10). Genband's expert, Dr. Beckmann, analyzes this evidence in his report[2] (excerpts at Dkt. Nos. 254-24; 284-2; 315-2) and concludes that this evidence shows direct infringement by Metaswitch customers. Dr. Beckmann opines that Metaswitch's manuals instruct customers how to use the accused products in an infringing manner. *See, e.g.* (Dkt. No. 315-2 at ¶¶ 637, 640, 643, 698). He also opines that Metaswitch engages in testing and support to assist and monitor its customers' infringing use of its products. *See, e.g.* (Dkt. No. 284-2 at ¶¶ 1224–1231). Relying on this evidence, Dr. Beckman opines "Metaswitch's customers directly infringe." (*Id.* at ¶ 1223).

This circumstantial evidence, viewed in the light most favorable to the non-movant, could permit a reasonable jury to find direct infringement. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1365 (Fed. Cir. 2012) ("This is not the first time we have concluded that where an alleged infringer designs a product for use in an infringing way and instructs users to use the product in an infringing way, there is sufficient evidence for a jury to find direct infringement."). Moreover Genband's direct infringement arguments are supported by the opinion of a qualified

---

[2] Metaswitch moved to strike many of Dr. Beckmann's opinions. (Dkt. No. 256). This request will be addressed in a separate order.

7

expert, giving rise to a genuine fact dispute. *See Vasudevan* Software, 782 F.3d at 683 ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case.").

*Second*, Metaswitch argues that Genband cannot prove the requisite state of mind—Metaswitch knew or was willfully blind to its customers' alleged infringement of Genband's patents. (Dkt. No. 254 at 23–25). Metaswitch notes that Genband's experts have not opined Metaswitch subjectively believed the accused products infringe. Instead, Metaswitch argues its non-infringement positions in this litigation are evidence that it believes its products do not infringe. Metaswitch points to its answer to Genband's complaint denying infringement, its noninfringement expert reports, its letter to Genband's counsel denying infringement, and its interrogatory answers as evidence of its state of mind. (Dkt. No. 297 at 11–12).

Metaswitch also advances the related argument that Genband cannot show "Metaswitch specifically intended to encourage any third party to infringe Genband's patents,"[3] but Metaswitch premises this argument on the same contention: Genband cannot prove that Metaswitch knew or was willfully blind to infringement and therefore Genband cannot prove Metaswitch intended to cause infringement. (Dkt. No. 254 at 24; Dkt. No. 297 at 10–13).

The mere fact that Metaswitch has raised and maintained non-infringement defenses in this litigation does not suffice to entitle it to summary judgment, else indirect infringement claims would never be tried to a jury. While Metaswitch's non-infringement defenses are relevant evidence of its state of mind, the essential inquiry at the summary judgment stage is not

---

[3] Metaswitch represents that "[i]ndirect infringement requires specific intent to encourage another's infringement." (Dkt. No. 254 at 23). This is not strictly correct; only induced infringement, not contributory infringement, requires a showing of specific intent to encourage infringement. *See, e.g. DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). However, both forms of indirect infringement require proof of "knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1928.

8

whether evidence supports the movant, but whether the nonmovant has adduced sufficient evidence to permit a reasonable jury to find in its favor. *See Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

"Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Metaswitch does not dispute that it knew of the asserted patents after the filing date of this lawsuit. It is also undisputed that Genband served infringement contentions on Metaswitch April 14, 2014, mapping Genband's infringement theories for each asserted claim.[4] Drawing all reasonable inferences in Genband's favor, a reasonable jury could conclude that Metaswitch possessed the requisite "knowledge of the patent in suit and knowledge of patent infringement" (or possessed the requisite willful blindness) after it received Genband's infringement contentions. *Commil*, 135 S. Ct. at 1928. Namely, a jury could believe that Genband's infringement theories are correct and that they were communicated to Metaswitch in Genband's infringement contentions. From this circumstantial basis, a jury could conclude that Metaswitch knew its products infringed or that it was willfully blind.[5]

---

[4] Metaswitch argues in its Reply that Genband's infringement contentions were deficient in certain respects. (Dkt. No. 297 at 12). However, Metaswitch did not bring these alleged deficiencies to the attention of the Court prior to the filing of its Reply Brief and has therefore waived its argument that Genband's contentions fail to satisfy Pat. L.R. 3–1. *Cf. Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006) ("[D]efendants also have a responsibility to make sure they fully understand the nature of plaintiffs' allegations. A defendant cannot lay behind the log until late in the case and then claim it lacks notice as to the scope of the case or the infringement contentions."). Moreover, it is ultimately a question of fact whether Genband's contentions are sufficient to give rise to an inference of knowledge or willful blindness on the part of Metaswitch.

[5] Genband also identifies, as evidence of intent, Metaswitch's delay in responding to a contention interrogatory on the issue of non-infringement, which Genband served April 16, 2014 and to which Metaswitch allegedly did not substantively respond until May 5, 2015. (Dkt. No. 284 at

This holding does not run afoul of *Vita-Mix's* admonition that "the mere knowledge of possible infringement will not suffice." *Vita-Mix*, 581 F.3d at 1328. The *Vita-Mix* Court did not hold that the requisite knowledge can be shown at trial only where infringement is uncontested or beyond question. Instead, the *Vita-Mix* Court held that summary judgment on the issue of intent was appropriate because it was "undisputedly possible to use the accused device as directed without ever practicing the claimed method." *Id.* at 1329. In other words, even crediting the *Vita-Mix* patentee's infringement theories as true, the Defendant could still reasonably believe that no users were directly infringing. Here, Metaswitch has not argued that infringement is merely "possible" if Genband's infringement theories are taken as true.

Finally, Metaswitch argues for the first time in its Reply that "Genband has not shown . . . the DC-SBC [accused product] is 'especially made or especially adapted for use in an infringement.'" (Dkt. No. 297 at 13–14). This argument was not raised in Metaswitch's opening brief. Furthermore, Dr. Beckmann offers opinions from which a reasonable jury could conclude that the DC-SBC is made to operate in combination with a media packet forwarder, is especially adapted to work with this component, and infringes when the two are combined. (Dkt. No. 315-2 at ¶¶ 314, 335).

For the foregoing reasons, the Court recommends that partial summary judgment of no indirect infringement after the date Genband served its preliminary infringement contentions

---

12). The Court does not give weight to this evidence for two reasons. First, the Court will not permit the jury to consider the timing of a party's interrogatory responses absent special circumstances such as an adverse inference instruction. Such evidence would be far more prejudicial than probative. Genband has neither requested nor received an adverse inference sanction on this issue. Second, the Federal Rules contemplate that contention interrogatories need not necessarily be answered early in a case. *See* Fed. R. Civ. Proc. 33(a)(2); *see also* Rule 33 advisory committee's note (1970 amendment, subdivision (b)) ("Since interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer").

(April 14, 2014) be **DENIED**. The Court recommends that partial summary judgment of no indirect infringement prior to April 14, 2014 be **GRANTED**.

## IV. SUBJECT MATTER ELIGIBILITY

Metaswitch moves for summary judgment that the asserted claims of U.S. Patent No 6,772,210 ("the '210 Patent") and U.S. Patent No 7,047,561 ("the '561 Patent") are invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter. (Dkt. No. 255).

For the reasons that follow, the Court recommends that summary judgment of invalidity under 35 U.S.C. § 101 be **DENIED**.

### A. The '210 Patent

The '210 Patent is entitled "Method and Apparatus for Exchanging Communications Between Telephone Number Based Devices in an Internet Protocol Environment." Metaswitch represents that "[a]ll of the independent claims contain limitations that are substantially similar to claim 1." (Dkt. No. 255 at 6 n.2). Claim 1 is reproduced here:

> 1. In an Internet Protocol (IP) communication system having a first network coupled to a second network through a gateway, wherein the first network and the second network are both IP networks, a method for exchanging communication messages between a first telephone number based device in the first network and a second telephone number based device in the second network, the first telephone number based device having a first address for use in the first network, the method comprising:
>
> allocating a second address for the first telephone number based device for use in the second network; and
>
> performing address translation on communication messages so that the first address for the first telephone number based device is used in the first network and the second address for the first telephone number based device is used in the second network.

Metaswitch argues that the claim preambles are not limiting. (*Id.* at 15–16, 25).[6] For the '210 Patent, this issue was never raised by either party during claim construction. The preamble of independent claim 1 provides the antecedent basis for no less than five terms found in the body of the claim: "first network," "second network," "first telephone number based device," "second telephone number based device," and "first address." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) ("When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention."). Moreover, the lengthy preamble breathes "life, meaning, and vitality" into the claim by explaining the structural context of the invention including how the two networks are coupled ("through a gateway") and what types of networks they are ("both IP networks"). *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("[A] preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim. Conversely, a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.") (citations omitted). All of these structures are "underscored as important by the specification," providing another clue that the preamble is limiting. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012); *see also, e.g.*, '210 Patent Figs. 1-2, 8, 1:9-2:46, 3:30-4:7. It is abundantly plain that the preamble of claim 1 is limiting. The preambles of the other asserted independent claims of the '210 Patent are substantially similar and are limiting for the same reasons.

---

[6] This Court has already explicitly held that the preambles of the independent claims of the '561 Patent <u>are</u> limiting. (Dkt. No. 135 at 18) ("the preambles are limiting"). Metaswitch's cursory footnote indicating that "the preambles of the asserted claims of the '561 Patent are not limiting" is at odds with the Court's holding. (Dkt. No. 255 at 25 n.10).

Metaswitch argues that the claims of the '210 Patent are invalid because they are directed to an abstract idea—"'allocating' (or 'mapping') an address within a communication message to another address and then performing 'address translation' on the message without any reference to material (*i.e.*, physical) objects." (Dkt. No. 255 at 13–14). Metaswitch contends that the claims are directed to "mere manipulation of binary data within abstractions called IP packets." (*Id.* at 16–18). Moreover, Metaswitch argues, nothing in the claim "transform[s]" this abstract idea into a patent-eligible claim because the claims "merely apply the well-known idea of address translation to a particular environment—one that includes 'telephone number based devices.'" (*Id.* at 19–22). Finally, Metaswitch also argues that the asserted claims of the '210 Patent fail the machine-or-transformation test and that this confirms Metaswitch's contention that the asserted claims are invalid. (*Id.* at 22-23).

As an initial matter, the fact that a claim involves the manipulation of binary data does not inherently render it abstract. If that were the case, no claim drawn to a digital device could ever survive § 101. The important question is whether the claimed "manipulation of binary data" is merely a computerized implementation of an abstract concept. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) ("the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium"); *Mayo Collaborative Servs. v. Prometheus Labs.*, Inc., 132 S. Ct. 1289, 1301 (U.S. 2012) ("simply implementing a mathematical principle on a physical machine, namely a computer, was not a patentable application of that principle"). Conversely, an invention that "do[es] not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet," but instead is "rooted in computer technology in order

13

to overcome a problem specifically arising in the realm of computer networks." has been held to be patent eligible. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Likewise, Metaswitch's focus on "concrete or material objects" is misplaced. (Dkt. No. 255 at 12). The law does not support a rule that the presence or absence of "concrete or material objects" defines the boundary between eligible and ineligible subject matter. Indeed, a claim implemented on an apparently "concrete" computer or storage medium may be patent ineligible if it merely embodies an abstract idea, whereas an invention as immaterial as software is potentially patent-eligible. *See In re Bilski*, 545 F. 3d 943, 960 n.23 ("we decline to adopt a broad exclusion over software or any other such category of subject matter").

Claim 1 of the '210 Patent is not directed to an abstract idea, and it is not drawn to the "manipulation of binary data" in an abstract way. Claim 1 is directed to a specific set of operations ("allocating a second address" and "performing address translation") which are confined to a particular context (two different telephone number based devices in two different networks using two different addresses, connected by a gateway). The utility associated with the claimed method is specific to the context recited in the claims—the need to translate message addresses between two different IP networks containing two different telephone number based devices. *See, e.g.*, '210 Patent at 3:44–4:7 (describing the problem of IP address non-uniqueness in the context of connected public and private VoIP networks, and positing the invention as a solution to this problem). The claims of the '210 Patent do not represent an attempt to capture a "building block[] of human ingenuity," "a method of organizing human activity," a "fundamental truth," an "idea of itself," or the like. *See Alice*, 134 S. Ct. at 2354–56. The claims of the '210

Patent, like the claims at issue in *DDR*, address a problem "specifically arising in computer networks," that "does not arise in the 'brick and mortar' context." *DDR*, 773 F.3d at 1257–58.

Even if the claim 1 could be fairly characterized as embodying an abstract idea, such as the concept of translating one address to another, the claim is patent-eligible because it recites "an element or combination of elements . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355. The claim recites a first and second "telephone number based device" operating in two different connected "IP networks," and the claim delimits the context in which the two claimed addresses are used ("the first address . . . is used in the first network and the second address . . . is used in the second network"). Hence claim 1 is implemented in the context of a non-generic computer system, and "improve[s] the functioning of the computer itself." *Alice*, 134 S. Ct. at 2359. For this same reason, claim 1 passes the machine-or-transformation test; it recites machines (telephone number based devices, IP networks, a gateway) that "impose a meaningful limit on the scope of a claim" by "play[ing] a significant part in permitting the claimed method to be performed." *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010).

For the foregoing reasons, Claim 1 of the '210 Patent is patent-eligible under § 101. The Court agrees with Metaswitch that Claim 1 is representative for purposes of the § 101 analysis and the other asserted claims of the '210 Patent are likewise patent-eligible.

## B. The '561 Patent

The '561 Patent, is entitled "Firewall for Real-Time Internet Applications." Metaswitch represents that "[a]ll of the independent claims contain limitations substantially similar to independent claim 12." (Dkt. No. 255 at 7 n.4). Claim 12 is reproduced here:

> 12. A method of protecting a computer network transmitting and receiving Internet protocol packets formatted in accordance with a real-time Internet protocol, each of said Internet protocol packets being associated with any one of a

signaling channel, a control channel, or a bearer channel, the method comprising the steps of:

i. receiving a stream of Internet protocol packets,

ii. applying the Internet protocol packets associated with the signaling channel and the control channel to an application proxy, and

iii. applying the Internet protocol packets associated with the bearer channel to a packet filter.

Metaswitch contends that claim 12 of the '561 Patent is invalid because it is directed to the abstract idea of "classifying packets based on their channel (bearer, signaling, or control) and then 'applying' the packets to one of two abstract components (either an 'application proxy' or 'packet filter') of a firewall." (Dkt. No. 255 at 24–25). Metaswitch argues that nothing in Claim 12 transforms this abstract idea into a patent-eligible application because "[e]ach of the recited steps of the '561 Patent merely 'constitutes general data processing functionality.'" (*Id.* at 25–27). Finally, Metaswitch argues that the claims fail the machine-or-transformation test because "[t]he claimed proxy and filter refer to broad 'classes' of generic components—not any 'specific component or specific material object.'" (*Id.* at 27–28).

Claim 12 is not directed to an abstract idea. Like claim 1 of the '210 Patent, claim 12 of the '561 Patent attempts to "overcome a problem specifically arising in the realm of computer networks." *DDR*, 773 F.3d at 1257. The claim recites a specific type of data structure unique to a specific class of computer networks ("Internet protocol packets formatted in accordance with a real-time Internet protocol"), requires that the packets be associated with one of three types of network channels, and requires that the packets be applied to a different firewall component depending on packet type. This is not a case in which an abstract idea or mathematical principle is carried out on a computer—the recited operations are meaningless outside the context of a computer network using specific types of data packets and specific channels defined by

16

particular protocols. *Compare Mayo*, 132 S. Ct. at 1301 *with DDR*, 773 F.3d at 1257; *see also* '561 Patent at 2:62–3:1 ("[R]eal-time Internet applications are based on real-time Internet protocols such as H.323, MGCP, Megaco/H.248 and Session Initiation Protocol (SIP). . . . In accordance with the real-time Internet protocols, there exist a combination of signaling channels, control channels and bearer channels.").

Metaswitch is likewise wrong to characterize "an application proxy" and "a packet filter" as inherently abstract components because they refer to "broad 'types' or 'classes' of firewall components and do not require or connote any specific structure." (Dkt. No. 255 at 24). A hypothetical claim limitation directed to "a cup" might encompass an extensive class of objects of varying shapes, sizes, materials, and functions (a coffee mug, a champagne flute, a disposable paper cup), and thus the word "cup" is abstract in the sense that it spans many different structures. But a cup is not an "abstract idea" in the sense meant by *Alice*, and neither are the "application proxy" and "packet filter" components recited in the claims. These components are not "building blocks of human ingenuity," "a method of organizing human activity," a "fundamental truth," an "idea of itself," or the like. *See Alice*, 134 S. Ct. at 2354–56. The "application proxy" and "packet filter" terms refer to specific components that have been construed to perform specific functions within a network. *See* (Dkt. No. 310 at 7–13). The fact that these components can be implemented in the form of "hardware and/or software" does not change their concrete, network-specific nature.

Even if Claim 12 could be thought of as directed towards an abstract idea (e.g. classifying data), the language of the claim recites "significantly more," rendering it patent eligible. Like claim 1 of the '210 Patent, Claim 12 of the '561 Patent is implemented in the context of a specific, non-generic computer system, and "improve[s] the functioning of the computer itself."

17

*Alice*, 134 S. Ct. at 2359. Also like claim 1 of the '210 Patent, claim 12 of the '561 Patent passes the machine-or-transformation test because at least the "computer network," the "application proxy," and the "packet filter" are machines that "impose a meaningful limit on the scope of a claim" by "play[ing] a significant part in permitting the claimed method to be performed." *SiRF Tech.*, 601 F.3d at 1333. Indeed, these machines are the only reason one would perform the claimed method in the first place.

For the foregoing reasons, Claim 12 of the '561 Patent is patent-eligible under § 101. The Court agrees with Metaswitch that Claim 12 is representative for purposes of the § 101 analysis; the other asserted claims of the '561 Patent are likewise patent-eligible.

## V. CONCLUSION

For the reasons stated above, summary judgment of no willful infringement should be **GRANTED**. Partial summary judgment of no indirect infringement prior to April 14, 2014 should be **GRANTED**. Partial summary judgment of no indirect infringement after April 14, 2014 should be **DENIED**. Summary judgment of invalidity under 35 U.S.C. § 101 should be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report by **January 9, 2015** shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 6th day of January, 2016.**

18

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE