IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GENBAND US LLC | § § | |
| v. | § § | Case No. 2:14-cv-33-JRG-RSP |
| METASWITCH NETWORKS CORP., ET AL. | § § § | |

## ORDER ON MOTION TO STRIKE

Before the Court is a Motion to Strike the Expert Report of Mark R. Lanning filed by Defendants Metaswitch Networks Ltd and Metaswitch Networks Corp. (collectively "Metaswitch"). (Dkt. No. 258).

## I. LAW

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field."); *TQP Dev. LLC v. 1-800-Flowers.com, Inc.*, Case No. 2:11-cv-248-JRG, 2015 WL 6694116, at *4 (E.D. Tex. Nov. 3, 2015) ("Dr.

1

Becker was entitled to rely upon Dr. Jager's technical analysis when constructing his damages model and presenting it to the jury.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence,

and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II. ANALYSIS

Mark R. Lanning is Genband's expert on issues of patent validity. (Dkt. No. 258-3 at ¶ 1). Metaswitch moves to strike five categories of opinions pursuant to Fed. R. Evid. 702. (Dkt. No. 258).

### A. Secondary Considerations of Non-Obviousness

Metaswitch moves to strike Mr. Lanning's opinions regarding certain secondary considerations of non-obviousness: copying, commercial success, and industry praise. (Dkt. No. 258 at 8–14). For each of these secondary considerations, Metaswitch argues that Dr. Lanning's opinions fail to establish a sufficient "nexus" or link between the features of the patented invention and the evidence upon which he relies.

Secondary considerations of non-obviousness serve as an important check on hindsight bias and "must always when present be considered." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1075-79 (Fed. Cir. 2012). However "a nexus between the copying and the novel aspects of the claimed invention must exist for evidence of copying to be given significant weight in an obviousness analysis." *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012). Likewise commercial success and industry praise should have a link to the invention if they are to be treated as persuasive evidence of non-obviousness. *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) (absent a nexus, evidence of commercial success was correctly afforded "little weight"); *Merck & Cie v. Gnosis S.p.A.*, 2015 U.S. App. LEXIS 21927 at *19-20 (Fed. Cir. Dec. 17, 2015) (where the nexus was weak, evidence of industry praise was correctly afforded "little weight").

The nexus requirement goes primarily to the weight secondary considerations should be given, and the *Daubert* inquiry is one of admissibility rather than weight. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). It is for the fact finder to determine the magnitude of the nexus that connects a given piece of evidence to the patents in suit and to give appropriate weight to that evidence. However, absent any nexus at all, the evidence cannot be entitled to any meaningful weight. Secondary consideration evidence that bears no possible nexus to the inventions of the asserted patents does not constitute sufficiently reliable "facts or data" upon which an expert can base an opinion under Fed. R. Evid. 702.

Accordingly, Mr. Lanning may rely on and offer opinions about evidence of copying, commercial success, and industry praise so long as this evidence is tied to some product, feature, or technology that Genband alleges embodies one or more asserted patents. Even if the product embodies technology other than just the asserted patents, the connection is sufficient to permit the circumstantial inference of a nexus. However, Mr. Lanning may not rely on evidence of generalized industry praise for Genband as a company which is not linked to any product or technology alleged to practice an asserted patent. Likewise Mr. Lanning may not offer the opinion that Metaswitch has a general "corporate culture" of copying; this opinion is not sufficiently connected to any alleged act of copying or attempted copying of a product or feature that practices an asserted patent. *See* (Dkt. No. 258-14 at 15). The same principle applies for evidence of commercial success.

Because most of the evidence upon which Mr. Lanning bases his opinions is tied to specific products or technologies alleged to practice the asserted patents, the Court will not strike his opinions that secondary considerations support a finding of non-obviousness. However, Mr.

Lanning will not be permitted to testify about or rely upon the types of evidence excluded by this Order.

**B. Enablement**

Metaswitch moves to strike Mr. Lanning's opinions on enablement of the '427 and '984 Patents, arguing "Mr. Lanning asserts in conclusory fashion that the patents are enabled without providing any analysis in his report that explains how one of ordinary skill would have been able to practice the asserted claims without undue experimentation." (Dkt. No. 258 at 14–15). "Mr. Lanning could have explained how one of ordinary skill might have gone about constructing the claimed modules and why such an endeavor would not have required undue experimentation." (*Id.*)

Irrespective of the opinions Mr. Lanning "could have" offered, the question is whether the opinions he <u>does</u> offer are sufficiently reliable under Fed. R. Evid. 702. Mr. Lanning's opinions are based on his technical expertise. His opinions are offered to rebut Metaswitch's expert's analysis of enablement. Mr. Lanning explains his opinion that an absence of "off the shelf" availability of components would not prevent a person of ordinary skill from making the claimed invention and he opines that the claimed invention is broader than the G6 embodiment and thereby concludes that Metaswitch's expert has placed too much emphasis on that embodiment. (Dkt. No. 258-17 at ¶¶ 211–13).

Genband, as patentee, does not bear the burden of proof on enablement, but even if this were not so *Daubert* does not require that an expert's opinions be sufficient to carry a party's burden. Mr. Lanning presents few opinions on the issue of enablement but the opinions he does offer are admissible rebuttal. They are supported by an explanation of his reasoning and his specialized knowledge as an expert.

**C. Subject Matter Eligibility**

Metaswitch moves to strike Mr. Lanning's opinions that the patents in suit claim patent-eligible subject matter under 35 U.S.C. § 101.

"The ultimate question of patent eligibility under § 101 is an issue of law." *BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig. v. Ambry Genetics Corp.*, 774 F.3d 755, 759 (Fed. Cir. 2014). Accordingly, the issue of subject matter eligibility under § 101 will not be tried to the jury in this case. No expert will be permitted to testify to the jury about whether the asserted patents claim eligible subject matter under § 101.

The Court is responsible for deciding disputed questions of law, and the Federal Circuit has consistently disfavored reliance on expert testimony as the basis for legal conclusions. *Cf. Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 991 n.4 (Fed. Cir. 1995) ("[a] patent law expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all") (citations omitted); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1564 (Fed. Cir. 1988) ("an expert's opinion on the legal conclusion of obviousness is neither necessary nor controlling"). Mr. Lanning's analysis of the law and his ultimate legal conclusions are not helpful expert testimony and are therefore inadmissible.

To the extent expert testimony is helpful when deciding a question of law such as subject matter eligibility, its utility is limited to supplying background facts about the nature of the art and the patents (similar to expert testimony in the context of claim construction, another question of law). The Court has already considered the issue of subject matter eligibility for two patents, the '210 Patent and the '561 patent. (Dkt. No. 408). The Court did not accord any significant weight to expert testimony when making this determination because the Court had already acquired sufficient familiarity with the subject matter of these patents during the claim

construction process. To the extent subject matter eligibility issues remain to be decided in this case, the Court expects to rely on Mr. Lanning's opinions very little, if at all.

**D. Conception and Reduction to Practice**

Metaswitch next argues that the Court should exclude Mr. Lanning's opinions on the dates of conception and reduction to practice for the '658, '427, and '984 Patents. (Dkt. No. 258 at 17). Metaswitch contends Mr. Lanning cannot identify any document bearing the alleged conception date that discloses all of the claim elements. (*Id.*) Metaswitch also contends that Mr. Lanning "provides nothing more than unsupported, conclusory opinions that the patentees for all of the asserted patents were diligent from conception to reduction to practice." (*Id.*)

Mr. Lanning relies on appropriate evidence to support his conception date opinions. For the '427 and '984 Patents, his report cites inventor testimony together with documents from the alleged conception date that he opines "disclose the key elements of the asserted claims." (Dkt. No. 286-15 at ¶¶ 15–18). For the '658 Patent he cites inventor testimony, an inventor-created presentation, and an invention disclosure form. (Dkt. No. 286-13 at ¶ 24). The fact that Mr. Lanning's opinions are based on his review of multiple pieces of evidence does not render them unreliable. There is no legal requirement that conception evidence take the form of a single "smoking gun" document. Mr. Lanning's conception date opinions are admissible.

However, Mr. Lanning's opinions on diligent reduction to practice are wholly conclusory and are therefore not admissible. He simply states that the time from conception to filing was "reasonable" and "[a]ssuming that the jury concludes that the inventor and patent counsel worked diligently to file the patent application" the patents are entitled to an earlier priority date than the date of filing. (Dkt. No. 286-15 at ¶ 19, Dkt. No. 286-13 at ¶ 24). This is just a statement

7

of the legal standard. Mr. Lanning provides no evidence or analysis to support his conclusion. Mr. Lanning may not opine that the inventors were diligent.

**E. The Court's Claim Construction**

Finally, Metaswitch argues that Mr. Lanning failed to apply the Court's claim constructions for the '561 Patent. (Dkt. No. 258 at 18–19). Metaswitch claims that Mr. Lanning has injected a negative limitation into his analysis of the term "applying the Internet protocol packets associated with the signaling channel and control channel to [an / the] application proxy" by prohibiting the signaling channel and control channel packets from first being applied to a packet filter and then being applied to the application proxy. (*Id.*). In Metaswitch's view, this transgresses the rule of claim interpretation that "comprising" claims may be infringed despite the presence of additional, unclaimed steps. *See Invitrogen Corp. v. Biocrest Manufacturing*, L.P., 327 F.3d 1364, 1368 (Fed. Cir. 2003).

This is not a dispute that the parties raised during claim construction. Metaswitch is correct that the "comprising" transition permits the addition of unclaimed elements. However, Mr. Lanning does not appear to have imposed a negative limitation or foreclosed the addition of unclaimed elements. Instead, he opines that the limitation "the <u>firewall</u> <u>applying</u> the Internet protocol packets associated with the signaling channel and the control channel <u>to the application proxy</u>" means the firewall must apply the packets to the proxy and not to some other entity (a packet filter). (Dkt. No. 258-18 at ¶¶ 42, 48, 57, 61, 67, 70, 82, 86, 125) (emphasis added). His interpretation of the claims is not inconsistent with the Court's construction. Whether he has correctly applied the properly construed claim to the prior art is a question of fact. *See In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). His opinions applying the "applying" terms to the prior art are admissible.

## III. CONCLUSION

Metaswitch's Motion to Strike the Expert Report of Mark R. Lanning (Dkt. No. 258) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth in this Order.

**SIGNED this 8th day of January, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE