IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GENBAND US LLC | § § § § § § | |
| v. | | Case No. 2:14-cv-33-JRG-RSP |
| METASWITCH NETWORKS CORP., ET AL. | | |

## ORDER ON MOTIONS TO STRIKE

Before the Court is a Motion to Strike the May 29, 2015 and June 19, 2015 Expert Reports of Dr. William H. Beckmann filed by Defendants Metaswitch Networks Ltd and Metaswitch Networks Corp. (collectively "Metaswitch"). (Dkt. No. 265). Also before the Court are Metaswitch's Motions to Strike the May 30, 2015 and June 20, 2015 Expert Reports of W. Christopher Bakewell. (Dkt. Nos. 267, 268).

## I. LAW

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field."); *TQP Dev. LLC v. 1-800-Flowers.com,*

1

*Inc.*, Case No. 2:11-cv-248-JRG, 2015 WL 6694116, at *4 (E.D. Tex. Nov. 3, 2015) ("Dr. Becker was entitled to rely upon Dr. Jager's technical analysis when constructing his damages model and presenting it to the jury.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a

question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## II. MAY 29 & JUNE 19 BECKMANN REPORTS

Metaswitch moves to strike two of Dr. Beckmann's reports: his May 29, 2015 Report in which he opines that Genband's products practice the asserted patents (Dkt. No. 265-3) and his June 19, 2015 "Supplemental Expert Report on Practicing Products" (Dkt. No. 265-7) which discusses "the cost of an alternative to the '561 patent." (Dkt. No. 265).

### A. Product Versions

Metaswitch asks the Court to strike Dr. Beckmann's opinions that certain Genband products practice the asserted patents. (Dkt. No. 265 at 7–12). Metaswitch argues that each of Dr. Beckmann's practicing products opinions is the product of improper "mixing and matching" among different versions of a Genband product, raising objections similar to those it raised in the context of the Motion to Strike Dr. Beckmann's infringement opinions . (*Id.* at 7; Dkt. No. 256 at 8–11).

Genband does not contest that Dr. Beckmann relied on evidence drawn from multiple versions of each product, but argues that there is evidence all versions of the relevant products operate the same with respect to the patented features. (Dkt. No. 290 at 8–10). Genband engineers testified that different versions are the same in relevant aspects. (*Id.* at 9).

Metaswitch's Reply emphasizes the fact that Dr. Beckmann does not cite these engineers' depositions in his report, and therefore cannot opine that he relied on this testimony. (Dkt. No. 305 at 4). That is true—he cannot opine the he relied on testimony not disclosed in his report. But the relevant question is whether Dr. Beckmann's choice of methodology (relying on documentation for multiple versions of the same product) is reliable. The testimony of

Genband's engineers provides objective evidence that his methodology is sound.[1] *See Daubert*, 509 U.S. at 593–94 ("general acceptance" of a theory in the "relevant scientific community" supports reliability of expert's opinions). The Court will not strike Dr. Beckmann's opinions on practicing products for essentially the same reasons it did not strike Dr. Beckmann's infringement opinions. (Dkt. No. 413 at 3–5).

**B. Burden of Proof**

Metaswitch argues that Dr. Beckmann applied the wrong burden of proof when conducting his practicing products analysis. (Dkt. No. 12–14). This is based on a deposition in which he responded in the affirmative to a question about whether the "burden of proof to prove a product is practicing an invention is lower than the burden of proof to prove that a product is infringing." (*Id.* at 13).

Dr. Beckmann does not purport to be a patent law expert, and this Court will not permit experts to testify to legal conclusions. *See* (Dkt. No. 413 at 6) (analyzing the admissibility "patent law expert" testimony). The Court—not Dr. Beckmann or any other expert—will instruct the jury on issues of law including the burdens of proof.

Whether Dr. Beckmann correctly understands the burden of proof has no effect on whether his technical opinions are admissible.[2] A technical expert is required to testify truthfully and to reliably apply his technical expertise to the facts of the case, but he need not understand the details of patent law. As the Court has already explained in previous orders, Rule 702 does not require that an expert's testimony be sufficient to meet a party's burden of proof.

---

[1] The Court need not (and does not) take a position at the *Daubert* stage on whether Dr. Beckmann's testimony alone is sufficient to meet Genband's burden of proof.

[2] Genband notes that Dr. Beckmann's report recites the correct burden of proof. (Dkt. No. 290 at 11).

## C. Discussions with Genband Employees

Metaswitch moves to strike Dr. Beckmann's opinions based on "discussions with three Genband employees, Mr. Cain, Mr. Jarzemsky, and Mr. Peeler."[3] (Dkt. No. 265 at 14–17). Although Metaswitch acknowledges "it is generally accepted that expert witnesses may rely on knowledgeable employees in forming their opinions," Metaswitch argues that Dr. Beckmann's reliance on conversations with Genband employees should be excluded because his report does not "disclose the content of those conversations" and because he was able to recall these conversations only at a "general level" during his deposition. (*Id.* at 15).

Where Dr. Beckmann relies on conversations with Genband employees, he discloses this fact in his report along with an explanation of his reasoning and methodology. *See, e.g.* (Dkt. No. 265-3 at ¶ 987). This is sufficient under Rule 702; an expert's report need not catalog all the details of the experiential knowledge upon which the expert relies. *Cf. Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 856 (E.D. Tex. 2012) (expert testimony based on "prior experience" was proper). The details of Dr. Beckmann's conversations with Genband employees (and the clarity with which he recalls them) may be fertile ground for cross examination. *See id.* However, his reliance on such conversations does not provide a basis to strike his testimony.

## D. June 19 Supplemental Report

Metaswitch contends that Dr. Beckmann's June 19 Report "does not respond to or rebut any opinions proffered by Metaswitch's experts" and is therefore not a proper rebuttal report. (Dkt. No. 265 at 17-18). Dr. Beckmann's eight-paragraph June 19 Report purports to rebut the expert report of Dr. Tim A. Williams, who opines regarding Metaswitch's non-infringing

---

[3] Genband also raises the same argument about conversations with Genband employee Danny Sylvain disclosed in Dr. Beckmann's June 19 Report. (Dkt. No. 265 at 18).

alternatives to the '561 Patent. (Dkt. No. 265-7 at ¶ 2). The June 19 Report sets forth Dr. Beckmann's opinion about a particular non-infringing alternative. Although he does not directly attack Dr. Williams' opinions, Dr. Beckmann's opinions discuss the same subject matter.

Moreover, Genband argues persuasively that the June 19 Report simply provides additional details about Dr. Beckmann's opinions already disclosed in Mr. Bakewell's opening report on damages. (Dkt. No 290-14 at ¶¶ 150–54). The Court agrees that the substance of Dr. Beckmann's June 19 Report is reflected in Mr. Bakewell's report. Moreover, Metaswitch had the opportunity to (and did) examine Dr. Beckmann and Mr. Bakewell about these opinions during their depositions. (Dkt. No. 290-2 at 262:15-279:16; Dkt. No. 290-15 at 369:24-400:11).

The Court is not persuaded that Dr. Beckmann's June 19 Report was improper or untimely, and the Court finds no prejudice to Metaswitch. The Court will not strike the report.

## III. MAY 30 BAKEWELL REPORT

Metaswitch moves to strike the May 30, 2015 expert report of W. Christopher Bakewell on the issue of damages. (Dkt. No. 268).

### A. Lost Profits and Irreparable Harm

Metaswitch moves to strike Mr. Bakewell's opinions about lost profits and irreparable harm. (Dkt. No. 268 at 9–11). Genband is seeking damages based on a reasonable royalty, not lost profits, and Mr. Bakewell has not opined that lost profits is the appropriate measure of damages in this case. (Dkt. No. 288 at 4–5). Nonetheless, Mr. Bakewell opines that "lost profits have definitely occurred" and concludes that his reasonable royalty damages are therefore "significantly understated." *See, e.g.* (Dkt. No. 269-1 at ¶ 118).

The Federal Circuit has consistently urged district courts to be circumspect in the admission of damages evidence "given the great financial incentive parties have to exploit the

inherent imprecision in patent valuation." *CSIRO v. Cisco Sys.*, 2015 U.S. App. LEXIS 20942 at *12 (Fed. Cir. Dec. 3, 2015). In a reasonable royalty analysis, damages evidence that is not closely tied to "the incremental value that the patented invention adds to the end product" runs a substantial risk of "skew[ing] the damages horizon for the jury." *Id.* at *13–15 (citing *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)). In this case, the extent of lost profits bears little if any relevance to the reasonable royalty apportionment analysis. Admitting such evidence carries with it a substantial risk of jury confusion.

Because "the relationship between licensor and licensee" is relevant to *Georgia-Pacific* factor five, Mr. Bakewell may opine about the status of Metaswitch and Genband as commercial rivals as well as the extent to which these companies compete for customers, sales, and market share. However, Mr. Bakewell may not: opine that Metaswitch's alleged infringement has resulted in lost profits to Genband; attempt to quantify these alleged lost profits; or insinuate that Genband's lost profits, lost sales, or lost customers are compensable as damages in excess of a reasonable royalty.

Genband represents that "Mr. Bakewell will not use the phrase "irreparable harm" in front of the jury." (Dkt. No. 288 at 5). Because injunctive relief is an equitable remedy, opinions about irreparable harm will not be presented to the jury. If the question of injunctive relief is ultimately tried to the bench in this case the Court will at that time decide whether any of Mr. Bakewell's opinions on this subject should be excluded. *See In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.").

**B. Nortel Evidence**

Metaswitch argues that Mr. Bakewell's testimony should be excluded because "he has selectively ignored relevant evidence pertaining to the Nortel hypothetical negotiation." (Dkt. No. 268 at 11–14). Metaswitch argues that Mr. Bakewell has declined to consider relevant evidence, such as Nortel's "form patent license agreement" and the testimony of two Nortel licensing executives.

Metaswitch, in essence, asks the Court to weigh the importance and credibility of various pieces of evidence—a task for the fact finder. The Federal Circuit "has recognized that questions regarding which facts are most relevant or reliable to calculating a reasonable royalty are 'for the jury.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014). Mr. Bakewell's decision not to consider the evidence Metaswitch cites does not demonstrate that his opinions are unreliable or based on unsound methodology. It is within the purview of a qualified expert to determine which evidence should be afforded significant weight, so long as he applies reliable principles and methods in making this determination.

Metaswitch also criticizes Mr. Bakewell's reliance on post-infringement evidence to support his opinions about the pre-infringement hypothetical negotiation. However, courts have recognized that such evidence can constitute a relevant "book of wisdom" and may properly be relied upon. *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014). Accordingly, the Court will not strike Mr. Bakewell's opinions on this basis.

**C. Reliance on Dr. Beckmann**

Metaswitch moves to strike Mr. Bakewell's reliance on Dr. Beckmann's opinions. (Dkt. No. 268 at 14–19). Metaswitch's request is premised on a re-uging of the arguments in Metaswitch's Motions to Strike Dr. Beckmann. (Dkt. Nos. 256, 265). The Court has denied the

relevant portions of those Motions. Accordingly, the Court declines to strike Mr. Bakewell's reliance on Dr. Beckmann's opinions.

## IV. JUNE 20 BAKEWELL REPORT

Metaswitch moves to strike the June 20, 2015 Rebuttal Report of W. Christopher Bakewell on the issue of damages. (Dkt. No. 267).

### A. FRAND *Georgia-Pacific* Factors

Metaswitch contends that "Mr. Bakewell's FRAND analysis is flawed because he applies the *Georgia-Pacific* factors without giving adequate consideration to Genband's FRAND obligation and how it would impact a FRAND analysis." (Dkt. No. 267 at 9–12). Metaswitch does not argue that Mr. Bakewell has applied the wrong *Georgia-Pacific* factors in the FRAND context. Instead Metaswitch argues that Mr. Bakewell has failed to properly account for the differences between his *Georgia-Pacific* analyses for the FRAND and non-FRAND contexts, resulting in him assigning the same royalties for both.

Genband responds that the details of Mr. Bakewell's methodology explains why he arrives at the same royalty in both contexts.[4] (Dkt. No. 287 at 4–7). First, Mr. Bakewell's royalty is premised on an attempt to calculate the "incremental value" of the patented technology over the next-best alternative, so both his FRAND and non-FRAND royalties exclude any value associated with the technology's "widespread adoption due to standardization." Second, he conducts a "conservative" royalty analysis in the non-FRAND context, in which he declines to adjust his "baseline" royalty upwards even when he finds that certain Georgia-Pacific factors exert upward pressure. (*Id.* at 6–7). Thus Mr. Bakewell arrives at the same FRAND and non-FRAND royalty rates for most of the asserted patents.

---

[4] It is undisputed that Mr. Bakewell's FRAND royalty for the '971 Patent is lower than his non-FRAND royalty.

9

Mr. Bakewell appears to apply sufficiently reliable principles and methods in his FRAND damages analysis. There is no rule that a FRAND royalty must always differ from a non-FRAND royalty. Likewise, there is no rule that precludes a patentee's expert from being "conservative" in his royalty analysis by declining to adjust his royalty upward. The fact finder will decide whether Mr. Bakewell's opinions are credible, but his methodology is not unreliable or contrary to law and will not be excluded.

**B. Royalty Base**

Metaswitch moves to strike Mr. Bakewell's royalty base determination, arguing that he has not correctly identified the smallest salable patent practicing unit ("SSPPU). (Dkt. No. 267 at 12–13). Metaswitch contends that Mr. Bakewell has identified a "blade" or a "subscriber" as the SSPPU and failed to consider the software components of the accused products as part of the SSPPU.

Mr. Bakewell's damages analysis is not based on the revenues attributable to the accused products, but reflects an attempt to directly calculate the "incremental benefit" of each patent over the "next-best" non-infringing alternative. *See, e.g.* (Dkt. No. 267-4 at ¶ 109). Mr. Bakewell's analysis attempts to directly apportion the royalty base to the precise value of the patented features, so it is not necessary for him to identify or rely upon the SSPPU. *Cf. CSIRO*, 2015 U.S. App. LEXIS 20942 at *17 ("The rule Cisco advances—which would require all damages models to begin with the smallest salable patent-practicing unit—is untenable."). The Court declines to strike his analysis on this basis.

**C. Reasonable Royalty**

Metaswitch argues that "Mr. Bakewell's June 20 Report . . . is completely devoid of any detail comparing the next-best alternative to the proposed standard at the time of the hypothetical

negotiation." (Dkt. No. 267 at 13–15). Metaswitch's criticism misses the mark. Mr. Bakewell compares each <u>patent</u> to the next-best non-infringing alternative, and cites to his May 30 report to supply the details of this analysis. *See* (Dkt. No. 267-4 at 44 n. 198). Presumably, comparing the "proposed standard" to the next-best alternative would yield the incremental value of the standard, not necessarily the value of the patent.

Metaswitch also criticizes Mr. Bakewell for relying on Dr. Beckmann's opinions regarding the next-best alternative rather than analyzing the evidence for himself. Mr. Bakewell is a damages expert, not a technical expert. He is entitled to rely on Dr. Beckmann's opinions on technical subjects. The Court will not strike Mr. Bakewell's reliance on Dr. Beckmann.

## III. CONCLUSION

For the foregoing reasons, Metaswitch's Motion to Strike the May 29, 2015 and June 19, 2015 Expert Reports of Dr. William H. Beckmann (Dkt. No. 265) is **DENIED**. Metaswitch's Motion to Strike the May 30, 2015 Expert Report of W. Christopher Bakewell (Dkt. No. 268) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth in this Opinion. Metaswitch's Motion to Strike the June 20, 2015 Expert Report of W. Christopher Bakewell (Dkt. No. 267) is **DENIED**.

**SIGNED this 9th day of January, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE