IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GENBAND US LLC | § § | |
| v. | § § | Case No. 2:14-cv-33-JRG-RSP |
| METASWITCH NETWORKS CORP., ET AL. | § § § | |

## ORDER ON MOTIONS TO STRIKE

Before the Court is a Motion to Strike Opinions of Dr. Eric W. Burger on Invalidity filed by Plaintiff Genband US LLC ("Genband"). (Dkt. No. 261). Also before the Court are Genband's Motion to Strike Certain Opinions of Dr. Tim A. Williams (Dkt. No. 262), and Genband's Motion to Exclude Certain Opinions of Metaswitch's Damages Expert Matthew R. Lynde. (Dkt. No. 266).

## I. LAW

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field."); *TQP Dev. LLC v. 1-800-Flowers.com,*

1

*Inc.*, Case No. 2:11-cv-248-JRG, 2015 WL 6694116, at *4 (E.D. Tex. Nov. 3, 2015) ("Dr. Becker was entitled to rely upon Dr. Jager's technical analysis when constructing his damages model and presenting it to the jury.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a

question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## II. DR. BURGER

Genband moves to strike the Expert Report of Dr. Eric W. Burger, arguing his anticipation opinions are improper because they do not show that each claim element is disclosed "in a <u>single</u> prior art reference, or that the claimed invention was previously known or embodied in a <u>single</u> prior art device or practice." *Minn. Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992).

### A. Incorporation By Reference

Genband argues that Dr. Burger offers anticipation opinions in which he combines multiple prior art references by arguing one is "incorporated by reference" in the other. (Dkt. No. 261 at 6–10). For example, Dr. Burger has opined that the Miller art incorporates by reference the ITU-T and Bellcore standards. (Dkt. No. 261-2 at 5–6). He offers comparable opinions for several other references. (Dkt. No. 261 at 8–10). Genband challenges these combinations of prior art references as improper in the context of anticipation.

"Whether material is incorporated by reference into a host document is a question of law." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009). "To incorporate matter by reference, a host document must contain language clearly identifying the subject matter which is incorporated and where it is to be found; a mere reference to another application, or patent, or publication is not an incorporation of anything therein." *Id.* (citations omitted).

Neither Dr. Burger's report nor Metaswitch's briefing demonstrates that any of the challenged art incorporates other art by reference. The challenged art includes at best general or vague references to the allegedly incorporated art (referring, e.g., to classes of standards rather

3

than specific standards documents), and it does not "clearly identify[] the subject matter which is incorporated and where it is to be found."[1] *See* (Dkt. No. 282 at 8–14).

Accordingly, Dr. Burger may not opine that any of the challenged art incorporates other art by reference for purposes of his anticipation analysis. However, Dr. Burger may opine that a piece of prior art, alone, anticipates. However, Metaswitch is correct that an expert may use his knowledge of the relevant art to define technical terms and to explain the meaning of a prior art disclosure. *See Pfund v. United States*, 40 Fed. Cl. 313, 345 n.16 (1998), *aff'd*, 178 F.3d 1313 (Fed. Cir. 1999) (noting that one of ordinary skill in the art, as both parties' experts agreed, would have understood the references to "coherent light" and "optical masers" in a prior art document to refer to lasers). Thus Dr. Burger may, for example, explain the meaning of a term or acronym in a prior art reference with reference to a standard that defines the term. *See* (Dkt. No. 282 at 9–10) (arguing certain relevant technical terms carry their glossary definitions in the Intelligent Networking standards). However, Dr. Burger may not rely on other references to supply missing claim limitations, nor may he state or imply that multiple references may be considered as one for purposes of anticipation.

**B. Combining Versions**

Genband moves to strike Dr. Burger's opinions regarding the Cisco Call Manager system, Lucent MMCX system, Cisco Prior Art Gateway Systems, and Cisco Open Packet Telephony system, arguing that Dr. Burger has "not established that a single version or particular embodiment of any of these alleged prior art systems perform or practice the asserted claims."

---

[1] In the case of the so-called "PINT" reference, which is a combination of two different documents, the only argument for incorporation by reference is the fact that both documents were authored by the same working group and "relate to the same underlying work." (Dkt. No. 282-11 at ¶ 386). Neither Metaswitch nor Dr. Burger point to any cross-reference or citation in the documents themselves.

(Dkt. No. 261 at 10–15). Genband's objections to Dr. Burger's opinions parallel Metaswitch's objections that Dr. Beckmann "mixed and matched" product versions in his infringement and practicing products opinions; they fail to persuade for the same reasons. *See* (Dkt. Nos. 413, 428)

Metaswitch cites evidence that the relevant versions of the allegedly invalidating prior art operated in the same way for purposes of the claimed features. (Dkt. No. 282 at 14–19). This evidence supports the reliability of Dr. Burger's methodology. The Court will not strike these opinions.

## III. DR. WILLIAMS

Genband moves to strike Dr. Tim A. Williams' testimony regarding invalidity and non-infringement. (Dkt. No. 262).

**A. Application of the Court's Claim Construction**

Genband argues that Dr. Williams has misapplied the Court's construction of "telephone number based device." (Dkt. No. 262 at 6–8). The Court construed "telephone number based device" as a "device identified by a telephone number for communication services." (Dkt. No. 135). Genband contends that "[e]ven if a device did have a telephone number assigned to it, Dr. Williams argued that it would not be a 'telephone number based device' because the telephone number would be converted into an IP address." (Dkt. No. 262).

Experts are not permitted to disregard or misapply the Court's claim constructions. *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012). However, nothing in Genband's motion or Dr. Williams' report indicates that he has ignored the Court's construction or deviated from the Court's holdings in the Claim Construction Order. Instead, Genband's disagreement is with Dr. Williams' "comparison of the properly construed claims to the accused product," which is a question of fact. *See Spectrum Pharms., Inc. v. Sandoz Inc.*, 802 F.3d 1326,

5

1337 (Fed. Cir. 2015). Whether a particular device is "identified by a telephone number for communication services" because it has a "telephone number assigned to it" is a fact question properly elucidated by expert testimony and cross-examination. The Court will not strike Dr. Williams' application of the claim construction.

**B. Opinions Regarding FireWall-1**

Genband notes that Dr. Williams has "provided analysis of versions 3.0 and 4.0 of Check Point's FireWall-1 product and Check Point's VPN-1 product" but argues he "also conclusorily opines that other versions of FireWall-1 are prior art." (Dkt. No. 262 at 8–9) Genband moves to strike "these other, unnamed versions of FireWall-1." (*Id.*)

Metaswitch responds that it "agrees to limit Dr. Williams' expert opinion on invalidity to Check Point Firewall-1 versions 3 and 4." (Dkt. No. 279 at 17). In light of this representation, the Court grants as agreed Genband's request to exclude opinions on versions of FireWall-1 other than versions 3 and 4.

**C. Firewall Control Protocol**

Dr. Williams' Report includes citations and analysis for the June 2000 IETF Internet Draft "Firewall Control Protocol Framework and Requirements" ("draft-kuthan-fcp-01"). *See* (Dkt. No. 262 at 9–10). Dr. Williams' Report also states that he "reserve[s] the right" to rely on an earlier March 2000 version of this document ("draft-kuthan-fcp-00"). (Dkt. No. 262-6 at 211). Genband argues that Dr. Williams should not be permitted to rely on the March 2000 report because he did not analyze it in his report. Metaswitch responds that the "March 2000 Draft and the June 2000 Draft include virtually identical disclosure of the same underlying work." (Dkt. No. 279 at 11–15).

An expert may only rely on opinions disclosed in his report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Metaswitch's Response clearly acknowledges that there are some differences between the two drafts. *See* (Dkt. No. 279 at 13). If the differences are in fact minor, Dr. Williams could have charted both references with relative ease or he could have offered some analysis comparing the two. Because he provided no analysis at all of the March 2000 draft in his report, he will not be permitted to testify about the March 2000 draft.

## IV. MR. LYNDE

Genband moves to strike certain opinions of Metaswitch's Damages Expert Matthew R. Lynde. (Dkt. No. 266).

### A. FRAND Obligation Opinions

Genband argues that Mr. Lynde's opinions regarding FRAND are legal conclusions about whether Genband is contractually obligated to license its patents at a FRAND rate. (Dkt. No. 266 at 11–13). Genband asks the Court to strike these opinions as improper legal testimony by an economic expert "as to the metes and bounds of the contracts at issue." (*Id.* at 12).

Metaswitch responds that Mr. Lynde "is not offering any legal conclusions regarding Genband's contractual obligations to license on FRAND terms, and instead was asked to assume for purposes of his analysis that Genband has a FRAND obligation under the relevant patent policies." (Dkt. No. 289 at 12). Consistent with Metaswitch's representation, it is proper for Mr. Lynde, as an economist, to assume for purposes of his analysis that a FRAND obligation exists and to opine about what effect this obligation would have on damages. This analysis necessarily requires him to analyze the scope and nature of the alleged FRAND commitment and to give his opinions about its economic effect. An analysis of this type does not constitute improper legal opinion. However, Mr. Lynde should use care not to run afoul of his and Metaswitch's

7

representations—he should not offer legal conclusions about whether Genband is actually bound by a contractual FRAND obligation.

**B. Comparable Patent Pool**

Genband asks the Court to strike Mr. Lynde's reliance on the W-CDMA patent pool license as evidence of the FRAND rate in this case. (Dkt. No. 266 at 13–16). Genband argues that this patent pool relates to different technology that is not sufficiently comparable to the patents-in-suit.

The Federal Circuit has "long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit." *ResQNet.com, Inc. v. Lansa, Inc,*, 594 F.3d 860, 869 (Fed. Cir. 2010). With that admonition in mind, the Court nevertheless concludes that Mr. Lynde's testimony is supported by sufficient evidence of comparability to render it admissible under *Daubert*. Mr. Lynde relies on the opinion of Metaswitch's technical expert Dr. Williams to determine that the technology licensed under the W-CDMA patent pool agreement is technically and economically comparable to the technology at issue in this case. (Dkt. No. 266-3 at ¶ 46, n.92). His opinions are supported by reliable economic and technical analysis.

Likewise, Mr. Lynde's opinions about the magnitude of the multiplier he applies are supported by analysis and are not "arbitrary" like the 25% rule of thumb. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). Mr. Lynde, relying upon his expertise as an economist, cites the need to adjust the patent pool licensing rate based on real-world factors such as the participation rate and the value of expected cross-licenses. (Dkt. No. 266-3 at ¶ 47). Based on these considerations, he determines that a multiplier of three is appropriate. (*Id.*)

Accordingly, the W-CDMA patent pool is sufficiently comparable to render Dr. Lynde's opinions admissible, and his multiplier opinions are supported by analysis. The precise degree of comparability goes to weight and may be explored by the parties on cross examination.

**C. Top Down Approach**

Finally, Genband criticizes Mr. Lynde's "top down" approach, which he uses to derive an alternative FRAND royalty rate. (Dkt. No. 266 at 16–17; Dkt. No. 266-3 at ¶¶ 49–51). Mr. Lynde conducts his top down analysis by "examining the operating profit associated with the smallest salable unit within the accused product, and apportioning that profit based on the value of Genband's SEPs to the VoIP standard as a whole." (Dkt. No. 289 at 16).

However, the way Mr. Lynde determines the fraction of the value of the "VoIP standard as a whole" to which Genband's patents are attributable is by counting the number of companies that provided intellectual property disclosures to the relevant VoIP standard setting organizations, and assuming that the value of each participant company's patent portfolio is the same. This approach ignores the size of each company, the number of patents in each company's portfolio, and the differences in value between patents—his approach necessarily assumes that every participant company's patent portfolio was exactly the same as Nortel's. Mr. Lynde's only justification for glossing over these details is that "Nortel is one of many large technology companies with significant patent portfolios in this area." (Dkt. No. 266-3 at ¶ 50). He does not attempt to quantitatively (or even qualitatively) compare Nortel's portfolio to the portfolios of the other participant companies.

Mr. Lynde's top down approach is highly speculative and not supported by sufficient "facts or data." *See In re Innovatio IP Ventures, LLC*, 2013 U.S. Dist. LEXIS 144061 at *168 (N.D. Ill. Sept. 27, 2013) (top down approach "requires verifiable data points, such as the

number of 802.11 standards-essential patents"). Mr. Lynde admits in his report that "there is no information available with regard to the specific patents that may be covered under the blanket declaration by a given company." (Dkt. No. 266-3 at ¶ 50). An absence of information is not a license to speculate. Mr. Lynde's opinions relating to the "top down" approach are excluded.

## V. CONCLUSION

For the foregoing reasons, Genband's Motion to Strike Opinions of Dr. Eric W. Burger on Invalidity (Dkt. No. 261) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth in this Order. Genband's Motion to Strike Certain Opinions of Dr. Tim A. Williams (Dkt. No. 262) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth in this Order. Genband's Motion to Exclude Certain Opinions of Metaswitch's Damages Expert Matthew R. Lynde (Dkt. No. 266) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth in this Order.

**SIGNED this 9th day of January, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE